IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
<u>SOUTHERN DIVISION</u>

MICHAEL KELLER, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO. 01-PWG-1365-S
)
FORD MOTOR COMPANY, )
)
Defendant. )

<u>MEMORANDUM OF DECISION</u>

This matter is before the court for consideration of the motion of defendant Ford Motor Company, a corporation, (Ford) for summary judgment pursuant to the provisions of Rule 56(c), *Federal Rules of Civil Procedure*. (Document #16). Plaintiff Michael Keller has filed a response to the motion. (Document #19). This matter is before the undersigned magistrate judge pursuant to the provisions of the General Orders of Reference dated July 25, 1996, May 8, 1998, as amended July 27, 2000, and 28 U.S.C. § 636(c). After careful consideration of the motion, the exhibits and plaintiff's opposition, the motion for Ford Motor Company for summary judgment is due to be GRANTED.

<u>JURISDICTION</u>

This action was filed in the Northern District of Alabama by plaintiff Michael Keller, a resident of the state of Alabama, alleging that Ford Motor Company, a Delaware corporation, and Eckenrod Ford, Lincoln, Mercury, (Eckenrod) an Alabama corporation, had engaged in conduct resulting in compensable injury to the plaintiff. (Document #1). Eckenrod filed a motion to compel arbitration. (Document #5). Plaintiff voluntarily dismissed Eckenrod as a defendant. (Document

#8). Neither plaintiff nor defendant dispute that diversity jurisdiction exists between the remaining parties. Plaintiff's complaint seeks damages in excess of $75,000.

### SUMMARY JUDGMENT-GENERAL PRINCIPLES

When addressing a motion for summary judgment the court is to construe the evidence and factual inferences arising from that evidence in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Federal Rule of Civil Procedure* 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 90 L.Ed.2d 202 (1986) (*citations omitted*).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions,

answers to interrogatories and admissions in the file, together with any affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2552-53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also Federal Rule of Civil Procedure* 56(e).

In meeting this burden, the non-moving party must do more than simply show that there is a metaphysical doubt as to the material facts. *Matsushita Electric Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is "genuine issue for trial." *Federal Rule of Civil Procedure* 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. 2510-11.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material facts and that it is entitled to judgment as a matter of law, the court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman* 873 F.2d 256 (11th Cir. 1989). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party may prevail as a matter of law."

*Anderson*, 477 U.S. at 251-52, 106 S.Ct. 2505. The inferences to be drawn from the evidence in favor of the non-moving party need not be more probable than those inferences in favor of the movant so long as the inference can be reasonably drawn from the undisputed facts. See *WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1980).

Mr. Keller has submitted no evidentiary material nor a brief of the legal issues raised by the motion of Ford. In his notice of opposition to the motion, however, he does state that "plaintiff does not agree with references that defendant had no knowledge of horsepower or performance problems." (Document #19, unnumbered p.1). In *Anderson, supra*, the Supreme Court made clear that a party may not rest on "mere allegation or denial" in response to a moving party who has met the initial Rule 56 burden but must support its position with affirmative and probative evidence. 477 U.S. at 256-57, 106 S.Ct. 2505. See also *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001); *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994).

<u>SUMMARY JUDGMENT–EVIDENTIARY CONSIDERATION</u>

Ford Motor Company has submitted in support of its motion for summary judgment a number of unopposed exhibits and the affidavit of Jerry W. Abston, a field services engineer with Ford. (Document #17, Attachment B). Mr. Abston stated in the affidavit that his averments were made "upon [his] personal knowledge and [his] review of the business records of Ford Motor Company." *Id*. The affidavit *inter alia* set out the design, production and post-production modification process of the engine in the vehicle that is the subject of this litigation. In his opposition to the motion for summary judgment, Mr. Keller avers that the affidavit "... appears to be based in part on hear say [sic] and often only paraphrasing the words of others with more direct personal knowledge." (Document #19). It is true that the general rule is that hearsay "cannot be

considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (citing cases compiled by the Sixth Circuit), Rule 56(e) of the *Federal Rules of Civil Procedure* require that "affidavits" that support or oppose summary judgment motions "shall be made on personal knowledge and shall set forth such facts as would be admissible in evidence." The Eleventh Circuit has restated the general rule to hold that a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be "reduced to admissible evidence at trial" or "reduced to admissible form." See *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillan v. Johnson*, 88 F.3d 1573, 1584-85 (11th Cir. 1996); *Raby v. Baptist Medical Centers*, 21 F. Supp. 2d 1341, 1353-54 n.9 (M.D. Ala. 1998). The Eleventh Circuit test is a derivative of the Supreme Court's holding in *Celotex Corp. v. Catrett, supra* in which the Court stated that a non-moving party in opposing summary judgment need not produce affidavits, but may refer the district court to "pleadings, deposition, answers to interrogatories and admissions on file," as provided by Federal Rule of Civil Procedure 56(c). A statement in an affidavit might be admissible because it falls into an exception to the hearsay rule, or does not constitute hearsay. An obvious exception to the application of the hearsay rule is found at F.R.E. 803(6). The business records of Ford and the information derived from those records is reducible to an admissible form at trial. Moreover, an attestation that an affidavit is predicated upon personal knowledge as distinguished from or statements made upon "information and belief" is relevant to a consideration of the admissibility of the averments in the affidavit. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002). Indeed, Mr. Keller does not assert that Mr. Abston is without personnel knowledge.[1] He merely argues that

---

[1] In his deposition Mr. Keller acknowledged that Mr. Abston had personally inspected his Cobra SVT. (Keller deposition at p.68).

Abston may have derived a portion of the information in his affidavit from individuals with "more direct personal knowledge." In light of the averments of the affidavit and the plaintiff's response, the Abston affidavit may be appropriately considered for the purposes of Rule 56. See, e.g., *Doe v. Lee*, 220 F. Supp. 2d 1307, 1311-12 (M.D. Ala. 2002); *Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc.*, 1993 W.L. 229601 at 5 (M.D. Fla. 1993). Moreover, if an affidavit submitted in support or opposition to a motion for summary judgment contains inadmissible evidence the court need only strike or disregard that portion which is inadmissible and consider the rest. See *Lee v. National Life Assurance Co.*, 632 F.2d 524, 529 (5th Cir. 1980). Mere conclusory allegations and conjecture, for example, may not be properly considered. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). However, matters within the personal knowledge of the affiant, predicated upon otherwise admissible evidence will satisfy the requirements of Rule 56(e). *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001).

## SUMMARY JUDGMENT --UNOPPOSED QUESTIONS OF LAW OR FACT

In his response to Ford Motor Company's motion for summary judgment, Mr. Keller states:

> Plaintiff is hereby directing his argument against summary judgment to the issues of intentional fraud and suppression as stated in counts five (5) and six (6) of the complaint as amended.

(Document #19).

As noted above, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law." Federal Rule of Civil Procedure 56(c). In the Eleventh Circuit a district court may not base the entry of summary judgment solely on the fact that the motion was unopposed, but must consider

the merits of the motion. *United States v. One Piece of Real Property located at 5800 S.W. 74th Avenue, Miami, Florida*, 363 F.3d 1099 (11th Cir. 2004) (citing *Dunlap v. TransAmerica Occidental Life Insurance Co.*, 858 F.2d 629, 632 (11th Cir. 1988)). Where, as here, a motion for summary judgment is opposed in part but discrete allegations or counts of the complaint are not reanimated in response to an evidentiary submission, such allegations may be deemed abandoned. *Resolution Trust Corporation v. Dunmart Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). See also *Greenbrier, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (In the appellate context noting that a failure to elaborate argument in a brief results in the abandonment of an issue).

COMPLAINT

Mr. Keller alleges that on May 29, 1999 he purchased a new 1999 SVT Mustang Cobra, a product of Ford, from Eckenrod in Cullman, Alabama. (Document #1). In general, he alleges that the Mustang Cobra SVT was represented and advertised to develop 320 horsepower from the 4.6-liter dual overhead cam engine. He alleges that he relied upon the horsepower and torque ratings as "advertised and warranted" in deciding to purchase the vehicle.[2/] He alleges that after the purchase he learned from Ford that some SVT Cobra vehicles had not met the 320 horsepower target. He contends that the purported failure of the Mustang to develop 320 horsepower resulted in a breach of an expressed warranty (count one), the breach of an implied warrant (count two), a breach of contract (count three), a breach of implied covenants of good faith (count four), a fraudulent misrepresentation (count five), a negligent misrepresentation (count six), an unjust

---

[2/]   Mr. Keller conceded during his deposition that he relied upon the horsepower rating because "Somebody like me don't really know what foot pound [a measurement of torque] is. But horsepower, when you see them marketing horsepower 320, that's what catches your eye." (Exhibit A, p.71).

enrichment (count seven), fraud (count eight) and wanton conduct on the part of the defendants (count nine).[3]

## UNDISPUTED FACTS

Michael Keller purchased a 1999 Ford Mustang SVT Cobra convertible from Eckenrod Ford in Cullman, Alabama. (Document #17, Exhibit A, deposition of Mr. Keller at p.24). Before choosing the Cobra SVT he had looked at other high performance vehicles including Corvettes and TransAms. *Id.* at p.25. He test drove at least one other SVT Cobra at a Decatur dealership. *Id.* at p. 25. He test drove the vehicle he eventually purchased from Eckenrod.[4]

Mr. Keller took delivery of the Cobra SVT on May 29, 1999. *Id.* at p.30. According to the plaintiff, in November 1999 the starter on the Cobra SVT failed at approximately 300 miles.[5] The dealership picked up the vehicle, replaced the starter and repainted the hood of the vehicle when Mr. Keller complained that it was scratched during the repair. *Id.* at p.37-38. When Mr. Keller later complained that the convertible top had ripped he was told that the dealership would put a "new top" on it. *Id.* He also complained of a "low growl" in the transmission and that he had some difficult in putting the car into reverse. (Deposition, p.37).

---

[3] The complaint originally named both Ford Motor Company and Eckenrod as defendants.

[4] Mr. Keller did not notice any indication that the Cobra SVT did not have 320 hp although he did not "hot rod" the vehicle during the test drive in part because his three children were in the car. *Id*, pp.27-29.

> Q: How many miles did you drive it?
> A: He told us to take it down the road, play with it and come back. He said there's a quarter tank of gas, burn it out if you want to.

(Keller's deposition, p.27).

[5] There is some evidence that the vehicle may have had 1,141 miles on the odometer when the starter was replaced. (Deposition, p.46, Exhibit I to document #17).

8

Mr. Keller did not personally experience performance problems with his SVT Cobra. *Id.*, pp.42-43. In November 1999 Ford wrote to a number of the 1999 SVT Cobra owners to inform these customers that some owners had "expressed concerns regarding engine performance." (Document #21, Exhibit J; Keller deposition at pp. 43-44). The letter informed customers that Ford would inspect and correct the condition by installing a new intake manifold and a new low restriction muffler assembly. Ford also proposed re-calibrating the power train control module and installing new front end accessory drive belt. (Exhibit J.)

Mr. Keller stated that he was approached by the dealership concerning the warranty engine modifications on his Cobra SVT. He testified that

> Then they approached me about wanting to keep my car for a couple of days and do some engine repairs on it that was recalled on the car. I asked them what sort of repairs are you going to do. And he told me, he said, "we're going to put a new exhaust, new fuel injection system, recalibrate the engine, new intake. " And he said, "you've got a horsepower problem." I said "well, build race cars, so I know race cars and I know performance cars. That sounds like ya'll trying to recreate horsepower."
>
> He said, "oh, yeah. That's what we're gonna do." And I said "no. We need to work something out. This is got all the stuff wrong with this car and I don't want this done. It's basically tearing down the whole engine down in the car."

(Document #17, Exhibit A, pp.38-39).

Mr. Keller told the dealer that "this is a brand new car. Ya'll lied to me." (Keller deposition, p.44). Mr. Keller demanded "Either [ ] a new car or [that the dealership] buy the car back and let me get one with the horsepower I want." (Deposition, pp. 44-45).[6]

Mr. Keller stated that Eckenrod, a dealership from which he had purchased a number of vehicles, "back[ed] him up one hundred percent [in his attempt to obtain satisfaction from Ford]." (Keller deposition, p.114). In addition to his complaint with respect to the horsepower performance improvement notice from Ford, Mr. Keller complained about vibration in the car when it reached 100 mph. (Keller deposition, p.66-68; 116). In addition, Mr. Keller complained that Ford did not manufacture a roll bar for the convertible model Cobra SVT. *Id.* Mr. Keller stated that he became "disgusted" with the vehicle and did not drive it for approximately two years. (Keller deposition, p.59). He later began to use the car after the expiration of the warranty. At the time of his deposition he had driven the vehicle approximately 7,000 to 10,000 miles. (Keller deposition, p.59-60; 66-68).

---

[6] Mr. Keller's only assessment of the horsepower output of his 1999 SVT was based upon his experiences with his neighbor's 1996 Cobra with a 305 engine.

> Q: When was the first time that you – I guess it would be that period – did you, I'm not saying race, but try to compare it?
> A: No. No.
> Q: How did it compare with the '96?
> A: The '96, Hoyt, me and him, I rode in Hoyt's '96 and he rode in mine, too. And basically, his '96 Cobra when he left out it was like this. And we come out of second gear, it was spinning tires. This is 305 horsepower.
>
> This '99 Cobra will not spin its tires in second gear. So, basically, he can get rubber through every gear. He actually did race his. He snatched the rear end out of it. He's a little older than I am. But he still likes to play a lot.
> Q: So basically it would be you driving in it driving his car and him driving in it or driving your car?
> A: There's no comparison in the cars and mine suppose to have 15 more horsepower.

(Deposition, pp.49-50).

Mr. Keller acknowledged that he had received a new vehicle warranty from Ford which provided for three years or 36,000 miles of warranty service on the Cobra including the engine. (Deposition, pp. 18-19). He also acknowledged that he understood that the warranty meant that if "anything [ ] goes bad on the car while I own it for three years/36,000 miles [Ford would repair, replace or adjust] anything defective." (Deposition, p.74). Mr. Keller does not dispute that with the repair and modification Ford proposed to make to his vehicle that the target horsepower would have been reached if his Cobra did not develop 320 horsepower when inspected. (Deposition, pp.90-91). He stated that the vehicle may have later developed unspecified problems if the repairs or upgrades had been performed. (Deposition, pp.94-95).

Defendant Ford does agree Mr. Keller's basic contention that the Cobra SVT is a small production line of automobiles marketed to a select group of car enthusiasts. Ford avers that during the design phase for the Mustang Cobra, Ford engineers employing the Society of Automotive Engineer standards programmed the 1999 engine to achieve a target 320 horsepower. According to Mr. Abston's affidavit, based upon his personal knowledge and a review of the business records of Ford, the 1999 Cobra attained the target horsepower in both "pre-production and production vehicles." (Document #17, Exhibit B). The 1999 Cobra was not sold to dealerships until the testing process had been completed. The vehicles were made available to dealers in February and March of 1999. Mr. Keller purchased his Cobra in May. In June of 1999 Ford determined that some of the 1999 Cobras experienced a "horsepower short fall" in that some vehicles did not produce the target 320 horsepower range. Ford undertook an investigation and determined that a parts supplier had improperly failed to machine excess flashing from the interior of a lower intake manifold resulting in a restriction of air flow. According to Ford, the early models of the 1999 Cobra did not have a

pronounced restriction but that the manifold problems became progressively worse as the supplier produced additional versions of the part. Accordingly, not every intake manifold had excess flashing and some intake manifolds had more such flashing than others. Ford engineers also determined that the angle of the vehicle's exhaust system in the production models created excessive back pressure resulting in a diminution of horsepower output.

Ford notified every 1999 Cobra SVT owner that Ford would replace the intake manifolds and exhaust systems through an Owner Notification Program (ONP).[2] Ford also notified the owners that it would re-calibrate the power train control module to boost horsepower if required. According to Ford, the vast majority of 1999 Cobra owners agreed to the ONP modifications and the 1999 Cobra's achieved the target horsepower in almost every case. Again, according to Ford, in the very few instances where the vehicles failed to produce the target horsepower range, Ford took additional steps to ensure the customer was satisfied, even providing a replacement engine.

It is undisputed that Ford did not sell the Cobra SVT to Mr. Keller but, rather, to Eckenrod Ford, Lincoln Mercury which in turn sold the vehicle to the plaintiff.

## APPLICABLE LAW

A federal court, sitting in diversity, is required to apply state substantive law and federal procedural law. See *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Accordingly, of particular application here is Alabama authority related to fraudulent misrepresentation, negligent misrepresentation and "wantonness."

---

[2] There is evidence that Ford chose to sue manifolds intended for the 2000 model year Cobras to correct the problems of the 1999 models which did not meet the horsepower target. Ford did not produce a SVT Cobra for the 2000 model year.

12

To establish a *prima facie* case of fraudulent misrepresentation under Alabama law, a plaintiff must show (1) that there was a false representation, (2) that concerned a material fact, (3) that the plaintiff relief on a false representation, and (4) that an actual injury resulted from that reliance. *Spooner v. State Farm Mutual Automobile Insurance Co.*, 709 So.2d 1157, 1160 (Ala. 1997). Similarly, in order to sustain a fraudulent suppression claim, a plaintiff is required to show that "(1) the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or refrain from acting; and that (5) the plaintiff suffered actual damages as a proximately result of acting or not acting. *Spain v. Brown & Williams Tobacco Corporation*, 872 So.2d 101, 123 Ala. 2003 (citing *Ex parte Household Retail Services*, 744 So.2d 871, 879 (Ala. 1999)). See also, *Booker v. United American Insurance Co.*, 700 So.2d 1333, 1339 (Ala. 1997).

## DISCUSSION

Count Five

In count five of his complaint Mr. Keller avers that Ford fraudulently misrepresented, concealed and omitted a material fact to induce him into believing that the 1999 Mustang Cobra SVT he purchased would produce 320 horsepower and 317 foot-pounds of torque. He avers that he suffered a direct monetary injury from the alleged misrepresentation. Ford has challenged Mr. Keller's ability to offer evidence to prove that Ford had actual knowledge of the allegedly misrepresented fact. Relying upon the Abston affidavit, Ford contends that because the testing of the engine in the Cobra SVT had established that the 4.6 liter motor would produce 320 horsepower the company had no knowledge of a shortfall before receiving complaints from some of its

customers. Moreover, Ford contends that its own records establish that the testing was done in conformity with the Society of American Engineer standards. Finally, Ford notes that the manifold restriction problem did not occur in the earlier production models of the 1999 vehicle and that the problem grew aggressively more acute in vehicles produced later. Mr. Keller does not refer the court to any evidence which would contradict the averments of the Abston affidavit. Moreover, as noted by Mr. Keller himself, Abston actually examined the Keller vehicle. While in his deposition Mr. Keller related to anecdotal evidence, including his own internet search, he does not offer any evidence in support of his claim that Ford was or should have been aware prior to the sale of his vehicle that his Cobra SVT would not produce 320 horsepower other than his own opinion.[8/] A careful review of Mr. Keller's deposition, the only other source of evidence, simply does not establish that there is any evidence that is admissible or reducible to admissible form to contradict the evidence before the court.[9/] Mr. Keller refers to no evidence from any source that Ford had knowledge that its pre-production and early production test results may have been inaccurate. Accordingly, Mr. Keller has not satisfied his burden of establishing that there is a material issue of fact presented by the available evidence or inferences to be drawn from that evidence. *Resolution Trust Corporation v. Dunmar Corporation*, 43 F.3d 587, 599 (11th Cir. 1995). The non-moving party "must make a sufficient showing to establish the existence of each essential element to that

---

[8/]  Indeed, Mr. Keller has not offered any evidence that his vehicle actually produced less than 320 horsepower. He has contended that one vehicle with a 305 horsepower engine outperformed his Cobra, but he does not offer evidence that the cause was the fact that his Cobra did not develop 320 horsepower.

[9/]  Indeed the deposition itself is replete with Mr. Keller's personal skepticism with respect to what Ford may have known but he ultimately admits that he has no knowledge of when Ford learned about the problem. (Keller deposition, p.79, line 15-17).

party's case, and on which the party would bear the burden of proof at trial. *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir. 1994).

Count Six–negligent misrepresentation

Count six of the complaint alleges a negligent misrepresentation of a material fact. Ford avers again that it had no actual knowledge of the fact that the vehicle purchased by Mr. Keller might not produce 320 horsepower from its engine. Ford also argues, however, that Mr. Keller's claims are barred by the "Economic Loss Rule" under Alabama law. Ford contends that the evidence is undisputed that Mr. Keller suffered no physical injury from the alleged negligent misrepresentation. Ford contends that if Alabama had recognized the "Economic Loss Rule" and that other courts have routinely applied the loss to negligent misrepresentation cases. Ford notes that under Alabama law Mr. Keller cannot establish that he has satisfied the injury element of the negligent misrepresentation claim. Again, Mr. Keller does not address in any fashion the legal argument offered by Ford. His response to the motion for summary judgment appears to reassert that Ford could have known that some Cobra SVT vehicles would not produce 320 horsepower as the company represented. His statements, however do not demonstrate that his vehicle would not produce 320 horsepower, or that Ford was negligent in relying upon its own pre-production and early production testing. There is no evidence that at the time of the alleged represetantion Ford should have suspected the test data indicating the engine would develop 320 horsepower. Moreoever, it is undisputed that when the problems were corrected under the ONP warranty all vehicles met the standard. Mr. Keller has not demonstrated that his claim is exempted from an application of the Economic Loss Rule nor offered any evidence that Ford's conduct was

"negligent." The negligent misrepresentation claim cannot be sustained in light of the present record.

Count one – breach of an express warranty

Ford correctly notes and Mr. Keller does not dispute that Ford provided plaintiff with a limited factor warrant which included an obligation for Ford to "repair, replace or adjust all parts ... that are defective in factor-supply materials...." (Exhibit F). Mr. Keller does not dispute that Ford offered to inspect his vehicle to determine whether there was a horsepower shortfall and to make necessary repairs which in turn would have continued to be subject to the provisions of the warranty. Mr. Keller has not attempted to demonstrate that Ford refused to repair the defect or was unable to do so in a reasonable time. *Lipham v. General Motors Corp.*, 665 So.2d 190, 192 (Ala. 1995). Accordingly, the defendant's motion for summary judgment on count one is due to be GRANTED.

Count two – breach of implied warranty

Ford correctly argues that there is a privity of contract requirement and that a manufacturer is not in privity of contract with the purchaser unless the seller has expressly acted as an agent of the manufacturer. *Well Craft Marine v. Zarzour*, 577 So.2d 414, 419 (Ala. 1990). While Mr. Keller avers that he "disputes" that Eckenrod Ford, Lincoln, Mercury is not an agent of Ford Motor Company there is simply no evidence of an agency relationship from any source. Ford has submitted evidence which as unrebutted establishes that there is indeed no agency relationship between the dealer and the manufacturer. Under Alabama law it is clear that implied warranties impose obligations only upon the seller. *Johnson v. Anderson Ford, Inc.*, 686 So.2d 224, 228 (Ala. 1996).

Accordingly, the breach of implied warranty claim cannot be sustained.

Count three – breach of contract

Ford correctly observes that the Retail Buyer's Order and purchase documents reflect that the contractual relationship existed only between Eckenrod Ford, Lincoln, Mercury and Mr. Keller. Ford is not alleged to have been a party to that contract. In the absence of the privity required under Alabama law, Ford is entitled to summary judgment on this claim.

Count four – implied covenant of good faith

As Ford correctly observes, with respect to its obligations under the warranty, Ford has performed or attempted to perform its obligations. The Alabama Supreme Court has not recognized the "implied covenant of good faith" in any context other than in assessment of insurance contracts. See *Lake Martin/Alabama Power Licensee Association, Inc. v. Alabama Power Company*, 601 So.2d 942, 944 (Ala. 1992).

Count seven – unjust enrichment

While Mr. Keller avers that Ford has been "unjustly enriched," it is clear that under Alabama law that Ford did not obtain payment for the vehicle directly from Mr. Keller and as such cannot have been unjust enriched. Mr. Keller has not challenged Ford's assertion that his claim is not sustainable under Alabama law.

Count eight – "fraud"

For the reasons set forth above with respect to count five of the complaint, plaintiff's claim is subject to summary judgment.

After review of the entire record, the Alabama law, the plaintiff's opposition to the motion for summary judgment and all available evidence, the court concludes that the record does not establish that there is a material issue of fact. Accordingly, the motion for summary judgment of

the defendant Ford Motor Company is due to be and the same is hereby GRANTED in its entirety. A separate final judgment consistent with this memorandum of opinion will be entered simultaneously herewith.

    As to the foregoing it is SO ORDERED this the ___15th___ day of July, 2004.

                                        /s/ Paul W. Greene
                                      PAUL W. GREENE
                                      CHIEF MAGISTRATE JUDGE